

AlaFile E-Notice

02-CV-2013-901663.00

To: NICHOLAS FRANCIS MORISANI
Nick.morisani@arlaw.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

EMPIRE STEVEDORING (AL), INC. ET AL V. NUCOR TRADING, SA
02-CV-2013-901663.00

The following complaint was FILED on 7/1/2013 5:22:33 PM

Notice Date:     7/1/2013 5:22:33 PM

JOJO SCHWARZAUER
CIRCUIT COURT CLERK
MOBILE COUNTY, ALABAMA
205 GOVERNMENT STREET
MOBILE, AL 36644

251-574-8420
jo.schwarzauer@alacourt.gov

ELECTRONICALLY FILED
7/1/2013 5:22 PM
02-CV-2013-901663.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

| State of Alabama  Unified Judicial System  Form ARCiv-93  Rev.5/99 | **COVER SHEET**  **CIRCUIT COURT - CIVIL CASE**  (Not For Domestic Relations Cases) | Case Number  02-CV-2013  Date of Filing:  07/01/2013 |
|---|---|---|

## GENERAL INFORMATION

**IN THE CIRCUIT OF MOBILE COUNTY, ALABAMA**
**EMPIRE STEVEDORING (AL), INC. ET AL v. NUCOR TRADING, SA**

**First Plaintiff:** ☑ Business ☐ Individual ☐ Government ☐ Other

**First Defendant:** ☑ Business ☐ Individual ☐ Government ☐ Other

**NATURE OF SUIT:**

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonnes
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☑ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawfyul Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:** F ☑ INITIAL FILING    A ☐ APPEAL FROM DISTRICT COURT    O ☐ OTHER
R ☐ REMANDED    T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT   _____

**HAS JURY TRIAL BEEN DEMANDED?** ☐ Yes ☑ No

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:** MOR160    7/1/2013 5:22:32 PM    /s/ NICHOLAS FRANCIS MORISA

**MEDIATION REQUESTED:** ☐ Yes ☑ No ☐ Undecided



ELECTRONICALLY FILED
7/1/2013 5:22 PM
02-CV-2013-901663.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

**Circuit Court of Mobile County, Alabama**

| | |
|---|---|
| **Empire Stevedoring (AL), Inc.,** § | |
| **and Empire Stevedoring** § | |
| **(Houston), Inc.** § | |
| § | |
| Plaintiff, § | |
| § | **Case No. CV-2013-_____** |
| *versus* § | |
| § | |
| **Nucor Trading SA,** § | |
| **Fictitious Defendants** § | |
| **A, B, C, and D** § | |
| § | |
| Defendants. § | |

## Complaint

Empire Stevedoring (AL), Inc. and Empire Stevedoring (Houston), Inc. (collectively "Empire") complains of Defendants as set forth below.

### Parties

1. Empire Stevedoring (AL), Inc. is an Alabama corporation qualified to do business in Alabama.

2. Empire Stevedoring (Houston), Inc. is a Texas corporation who is the sole shareholder of Empire Stevedoring (AL), Inc.

3. Defendant Nucor Trading, SA ("Nucor"), is a foreign corporation based in Switzerland which was conducting business in Mobile County, Alabama at all times relevant to the facts and circumstances underlying this litigation.

4. Fictitious Defendants A, B, C, and D are those defendants—whose identities are unknown at this time but will be supplemented upon receipt of information sufficient to identify

them—responsible for the actions and obligations of Nucor and its officers, agents, employees and assigns.

## Allegations of Fact

5. Empire adopts and fully incorporates the foregoing allegations in full.

6. Upon information and belief, Nucor is in the business of, among other things, transporting steel to various locations around the world via cargo vessel.

7. Nucor's operations take it to various ports along, among other locations, the United States Gulf Coast, including Mobile, Alabama, and Houston, Texas.

### *A. Port of Mobile*

8. Empire adopts and fully incorporates the foregoing allegations in full.

9. On or around June 10, 2012, the M/V Navajo Princess ("Navajo Princess"), a cargo vessel, was directed to the Port of Mobile, Mobile County, Alabama.

10. Upon information and belief, Rodney Corrigan, was serving as an employee and/or duly authorized agent of Nucor in and for its operations at the Port of Mobile with actual and/or apparent authority to bind Nucor.

11. On or about June 10, 2012, Nucor, through Rodney Corrigan, Nucor's employee and/or duly authorized agent, entered into a contract with Empire pursuant to which Empire was to load cargo billets on the Navajo Princess at the Port of Mobile.

12. On or about June 12, 2012 before the commencement of Empire's operations, the Captain Milko Kazakov of TBS Shipping Services, the operator of the M/V Navajo Princess, informed Empire that the vessel's cranes were having issues and could not be operated "in gemini," a process by which two cranes are "married" to allow the cranes to work in tandem,

which, in turn, requires less manpower and allows stevedores such as Empire to accomplish more work using less of Empire's resources (i.e. time and resources).

13. As a consequence of the fact the vessel's cranes could not work in gemini, Empire and Nucor, through its employee and/or duly authorized agent Rodney Corrigan, who was fully aware of the crane related issues with the Navajo Princess, reached an agreement where multiple cranes would be utilized, which would require Empire to expend additional man power and man hours resulting in a loss of production for Empire. This agreement was confirmed in writing.

14. On or about June 16, 2012, Empire completed the loading of the Navajo Princess.

15. Nevertheless, Nucor subsequently failed to pay the amount agreed upon between Empire and Nucor, through its employee and/or agent Rodney Corrigan representing compensation for Empire's loss of production caused by the inability to operate the Navajo Princess's cranes in gemini.

16. As a consequence, the sum of TWENTY-FIVE THOUSAND, NINE HUNDRED DOLLARS AND 85/100 ($25,900.85) remains due and owing from Nucor to Empire.

17. In addition, Nucor failed to pay for charges totaling EIGHT-HUNDRED FIFTY TWO DOLLARS AND 79/100 ($852.79) billed by the Alabama State Port Authority related to cargo that did not arrive at the port in time to be loaded by Empire.

18. In sum, Nucor is indebted to Empire in the total amount of TWENTY-SIX THOUSAND SEVEN-HUNDRED FIFTY THREE DOLLARS and 64/100 ($26,753.64) stemming from Empire's provision of services and labor to Nucor at the Port of Mobile.

### *B. Port of Houston*

19. Empire adopts and fully incorporates the foregoing allegations in full.

20. Shortly after Empire's services and labor related to Nucor concluded, Nucor contacted Empire regarding another cargo vessel owned and/or operated by Nucor, the M/V Atlantic Express ("Atlantic Express") which was expected to dock at the Port of Houston in Houston, Texas, in late August 2012.

21. Just as with the Navajo Princess, Nucor reached an agreement with Empire to have Empire load steel billets onto the Atlantic Express pursuant to a quoted rate structure provided by Empire to Nucor.

22. On or about August 12, 2012, however, Empire notified Nucor of Empire's apprehension regarding the Atlantic Express given the vessel's age, condition, and safety concerns.

23. In addition, Empire requested but never received proper certifications of the Atlantic Express.

24. On or about August 13, 2012, Empire notified Nucor that Empire did not believe it could accomplish the productivity to maintain the rate structure originally quoted by Empire to Nucor, and, consequently, Empire informed Nucor in writing the rate structure may have to be increased to reflect the increase in equipment and productivity costs caused by the condition of the Atlantic Express; Nucor did not object.

25. The Atlantic Express arrived at the Port of Houston on or about August 24, 2012.

26. On or about August 24, 2012, Empire's crane operators observed the Atlantic Express to familiarize themselves with the vessel's cranes prior to beginning labor.

27. After doing so, Empire's crane operators doubted the cranes' capabilities to maintain the production levels Empire is able to maintain when using electro-hydraulic pedestal

4

mounted luffing/slewing cranes, and Empire's original quoted rate structure was based upon use of such electro-hydraulic pedestal mounted luffing/slewing cranes.

28. Nevertheless, Empire attempted in good faith to make use of the Atlantic Express's cranes to load the steel billets, yet, after doing so for approximately two hours, it was determined using the vessel's cranes would be an inadequate, inefficient, unsafe and an unproductive effort.

29. As a result of the condition of the vessel's equipment, Empire utilized cranes on the shore, which cost $300 per hour; again, Nucor never objected to Empire doing so.

30. While loading the Atlantic Express, Empire also experienced problems with the vessel's tank ceilings, which were uneven and depressed and caused the fork lifts available on the vessel to lose loads while in the process of stowing operations. Besides being inherently dangerous (each billet is 2.4 metric tons), this process was also inefficient and unproductive. Thus, Empire had to replace the fork lifts provided with more suitable equipment.

31. Empire was initially provided stowage size information from Nucor. However, once Empire began stowage operations, it determined this information was incorrect and the tank stowage size was smaller than initially reported. Empire initial rate quote took into consideration the stowage size information provided from Nucor. As a result of the actual tank stowage size, Empire experienced significant increases in costs as a result of additional time and resources required to complete the assignment.

32. Based on these and other issues with the condition of the Atlantic Express, Empire took additional professional measures by commissioning a maritime surveyor to confirm Empire's concerns related to the vessel.

5

33. The maritime surveyor, MARIND-TECH International Corp., recommended that Empire not utilize the ship's cranes and gears. Furthermore, the maritime surveyor concluded that Empire "had every right to decline utilizing the unsafe vessel's cargo cranes" to "prevent damages and an incident and/or accident."

34. As a consequence, Empire notified Nucor that the cost for the services Nucor requested from Empire in fact was going to be increased from the original quoted rate structure.

35. Nucor did not object to the increased rate structure and allowed Empire to complete the project as required.

36. Upon completion, Empire invoiced Nucor for THREE HUNDRED FIFTY-NINE THOUSAND FIVE-HUNDRED TEN DOLLARS AND 80/100 ($359,510.80).

37. Nucor short-paid the invoice leaving FORTY-ONE THOUSAND THIRTY-SIX DOLLARS AND 36/100 ($41,036.36) due and owing to Empire from Nucor.

### Count I
### Declaratory Judgment as to the Contract Related to the Navajo Princess

38. Empire adopts and fully incorporates the foregoing allegations in full.

39. An actual controversy has arisen and now exists relating to the rights and duties of Empire and Nucor, in that Empire contends a valid, enforceable contract exists between the parties pursuant to which Nucor owes Empire $26,753.64, inclusive of the outstanding charges from the Alabama State Port Authority, plus interest and costs.

40. Empire contends Nucor agreed, through its employee and/or duly authorized agent Rodney Corrigan, to pay $1.75 per metric ton as compensation to Empire for the loss of production Empire suffered in performing and completing labor related to the Navajo Princess.

41. Accordingly, there now exists between the parties an actual, justiciable controversy in respect to which Empire is entitled to have a declaration of its rights and further relief, including a specific performance of the contract.

42. Wherefore, Empire respectfully requests an Order from this Honorable Court declaring:

   a. a valid, enforceable contract exists between Empire and Nucor exists;

   b. pursuant to that contract, Nucor agreed to pay $1.75 per metric ton for loss of production costs to Empire; and

   c. such other and further relief as may be deemed just and proper.

## Count II
### Breach of Contract Related to the Navajo Princess

43. Empire adopts and fully incorporates the foregoing allegations in full.

44. On or about June 10, 2012, Nucor, through its employee and/or duly authorized agent, Rodney Corrigan, contracted the services of Empire to load billets on the Navajo Princess at the Port of Mobile.

45. Prior to commencing labor, Empire was informed by the Navajo Princess's master that the vessel's cranes could not be operated in gemini.

46. Empire and Nucor, through its duly authorized agent, Rodney Corrigan, thus reached an agreement whereby Empire would charge and Nucor would pay an additional $1.75 per metric ton as loss of production cost created by the fact Empire was required to utilize additional man power, man hours, and to operate multiple shore cranes to perform the labor requested by Nucor.

47. All conditions precedent to Nucor's payment for loss of production to Empire have been satisfied and Empire has fully performed the contract.

48. Nucor has failed and neglected to perform the contract in that Nucor has failed to pay the sum of money representing Empire's loss of production costs, or any part thereof, although payment has been duly demanded by Empire.

49. Wherefore, Empire demands judgment against Nucor for the sum of TWENTY-SIX THOUSAND SEVEN-HUNDRED FIFTY THREE DOLLARS and 64/100 ($26,753.64), inclusive of the outstanding charges from the Alabama State Port Authority, plus all applicable interest and costs.

### Count III
### Breach of Contract Related to Services Performed on the Atlantic Express

50. Empire adopts and fully incorporates the foregoing allegations in full.

51. On or about August 12 and 13, 2012, Nucor requested, through its Managing Director Michael Setterdahl, and Empire agreed to load billets onto the Atlantic Express upon the vessel's arrival at the Port of Houston subject to a quoted rate structure which was expressly made subject to the condition of the aging vessel.

52. On or about August 29, 2012, Empire completed its loading operations on the Atlantic Express after having to make several changes to the rate structure quoted given problems stemming from the vessel's age, condition, and safety concerns, all of which was expressly communicated to Nucor, through its Managing Director, by Empire while the work was ongoing.

53. All conditions precedent to Nucor's payment to Empire for services performed have been satisfied and Empire has fully performed the contract.

54. Nucor has failed and neglected to perform the contract in that Nucor has failed to pay the entire sum due and owing to Empire although payment has been duly demanded by Empire.

55. Wherefore, Empire demands judgment against Nucor for the total sum of FORTY-ONE THOUSAND THIRTY-SIX DOLLARS AND 36/100 ($41,036.36), plus all applicable interest and costs.

### Count IV
### Open Account

56. Empire adopts and fully incorporates the foregoing allegations in full.

57. Nucor owes Empire the total amount of SIXTY-SEVEN THOUSAND, SEVEN HUNDRED NINETY DOLLARS AND 00/100 ($67,790.00) by open account relating to services and labor performed related to the Navajo Princess and Atlantic Express.

58. Wherefore, Empire demands judgment against Nucor in the amount of $67,790.00 plus interest, attorneys fees, and costs.

### Count V
### Account Stated

59. Empire adopts and fully incorporates the foregoing allegations in full.

60. Nucor owes Empire the total amount of SIXTY-SEVEN THOUSAND, SEVEN HUNDRED NINETY DOLLARS AND 00/100 ($67,790.00 ) by account stated stemming from services and labor performed and billed related to the Navajo Princess and Atlantic Express.

61. Wherefore, Empire demands judgment against Nucor in the amount of $67,790.00 plus interest, attorneys fees, and costs.

### Count VI
### Work and Labor Done

62. Empire adopts and fully incorporates the foregoing allegations in full.

63. Nucor is indebted to Empire in the total amount of SIXTY-SEVEN THOUSAND, SEVEN HUNDRED NINETY DOLLARS AND 00/100 ($67,790.00) for work and labor done for Nucor at Nucor's request on various dates between June 10, 2012, and August 30, 2012. Such

work and labor done by Empire for Nucor consisted of loading billets of steel on the cargo vessels Navajo Princess and Atlantic Express.

      64.    Although demand has been made on Nucor, only a partial amount of the account has been paid, and the remaining amount of such account is due and payable to Empire from Nucor.

      65.    Wherefore, Empire requests judgment against Nucor for the sum of $67,790.00, plus interest and costs, and such other and further relief as the court deems just and proper.

Respectfully submitted this 1st day of July, 2013:

**ADAMS AND REESE LLP**

R. Scott Hetrick (HET001)
scott.hetrick@arlaw.com

*Nick Morisani*
Nicholas F. Morisani (MOR160)
nick.morisani@arlaw.com

11 North Water Street, Suite 23200
Mobile, Alabama 36602
(251) 433-3234 (phone)
(251) 438-7733 (facsimile)

*Attorneys for Empire Stevedoring, Inc.*

**Certificate of Service**

Defendant to be served by private means of service at:

Nucor Trading, SA
Avenue Rousseau 7
CH-2000 Neuchatel
Switzerland

ELECTRONICALLY FILED
7/1/2013 5:22 PM
02-CV-2013-901663.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

**Circuit Court of Mobile County, Alabama**

| | |
|---|---|
| **Empire Stevedoring (AL), Inc.,** § <br> **and Empire Stevedoring** § <br> **(Houston), Inc.** § <br> § <br> **Plaintiff,** § <br> § Case No. CV-2013-_____ <br> *versus* § <br> § <br> **Nucor Trading SA,** § <br> **Fictitious Defendants** § <br> **A, B, C, and D** § <br> § <br> **Defendants.** § | |

---

**Affidavit of Bruce Wilson**

---

"My name is Bruce Wilson, and I am a Manager for Empire Stevedoring (AL), Inc. and Empire Stevedoring (TX), Inc., (at times referred to collectively as "Empire"). I am over the age of majority and am authorized to make this affidavit on behalf of Empire. In my working capacity and based on my working knowledge, I have personal knowledge of and, if called upon to provide testimony, am competent to testify to the following:

1. Empire has brought into issue through this lawsuit two accounts between Empire and Defendant Nucor Trading, SA ("Nucor SA") pursuant to which Nucor SA owes a total of SIXTY-SEVEN THOUSAND, SEVEN HUNDRED NINETY DOLLARS AND 00/100 ($67,790.00). The following itemized amounts make up this total, which remains due and owing from Nucor SA to Empire.

2. Invoice Number C10-0121352 for work and labor performed by Empire Stevedoring (AL), Inc. on the M/V Navajo Princess: TWENTY-FIVE THOUSAND, NINE HUNDRED DOLLARS AND 85/100 ($25,900.85).

**EXHIBIT A**

3. Invoice Number C-10-0121479 for charges by the Alabama State Port Authority (Invoice #B2-101-G6027) related to cargo that did not arrive at the port in time to be loaded: EIGHT-HUNDRED FIFTY TWO DOLLARS AND 79/100 ($852.79).

4. Invoice Number C10-0121481 for work and labor provided by Empire Stevedoring (Houston), Inc. to the M/V Atlantic Express pursuant to which FORTY-ONE THOUSAND THIRTY-SIX DOLLARS AND 36/100 ($41,036.36) remains outstanding and owing to Empire from Nucor SA.

Further affiant sayeth not."

_____
Affiant

STATE OF Louisiana

COUNTY OF St. Tammany

On this the 27 day of June, 2013, personally appeared before me, the undersigned Notary Public in and for said Parish in said State, Bruce A. Wilson, who is known to me to be the identical person described hereinabove and who executed the foregoing, and who acknowledged and took an oath that the same is true and fully understood by her after having read the same, and who further acknowledged that she executed the same as her free act and for the uses and purposes expressed therein.

Given unto my hand this the 27 day of June, 2013.

_____
Notary Public

HOWARD E. HILKER, JR., NOTARY PUBLIC #65487
MY COMMISSION EXPIRES WITH MY LIFE
_____
Expiration

**EXHIBIT A**